UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL F. JACKSON,

      Petitioner,

v.                                  Case No.  5:14cv357/MW/CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 18).  Petitioner replied.  (Doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On December 23, 2009, petitioner was charged in Jackson County Circuit Court Case Number 09-CF-744, with one count of sale or delivery of a controlled substance (cocaine), in violation of Section 893.13(1)(a), Florida Statutes. (Doc. 18, Ex. A).[1]  Petitioner's crime was a second degree felony carrying a statutory maximum of 15 years imprisonment.  *See* Fla. Stat. § 775.082 (2009).  The drug sale (a controlled buy by a confidential informant) was captured on videotape.  (*See* Ex. D, p. 116).

The day petitioner's case was scheduled for jury selection, August 23, 2010, petitioner entered a counseled, non-negotiated, straight/open plea of no contest to the charge.  Petitioner's plea was memorialized in a written "Plea, Waiver and Consent" form which petitioner executed and defense counsel co-signed.  (Exs. B, C).  By signing the written plea form, petitioner attested that he was informed that the maximum penalty the court could impose for his offense was 15 years in the Florida Department of Corrections; that he felt his plea was in his best interest; that he was advised of the nature of the charge against him; that he had sufficient time to discuss the charge with his attorney; that he was satisfied with the services and

---

[1] All references to exhibits are to those provided at Doc. 18, unless otherwise noted.  References to page numbers within a particular exhibit are to those appearing at the bottom center of the page.

advice of his attorney; that no person made any promises or suggestions of any kind to him that if he pled to the charge he would receive a light sentence, probation, or any other form of leniency; that he understood the constitutional rights he was giving up by entering his plea and he knowingly waived those rights; that his plea was entered freely and voluntarily and of his own free will with no one having forced, threatened, persuaded, promised, induced or otherwise influenced him to enter his plea; that he was in full command of his normal faculties; that he agreed that the State of Florida could prove a prima facie case that he committed the crime charged; and that he had the advice of counsel on, and fully understood the matters addressed within, the plea form.  (Ex. B).

   Upon receipt of petitioner's written plea, the trial court conducted a plea colloquy wherein he questioned petitioner about the voluntariness of his plea, as well as his understanding of the nature of the charge, the maximum sentence he could receive and the consequences of his plea.  (Ex. C).  Petitioner affirmed under oath that he signed the plea form after going over it with his attorney; that he was knowingly entering his no contest plea to the charge of sale of cocaine; that he understood the maximum sentence he could receive was 15 years in state prison; and that no one promised him anything or threatened him in any manner to induce him to enter the plea.  (Ex. C).  The prosecutor recited the factual basis for petitioner's

plea.  The trial court determined there was a sufficient factual basis and that the plea was knowingly and voluntarily entered with the advice of counsel, and accepted petitioner's plea.  (*Id.*).  A pre-sentence investigation was ordered, and the matter was set for a sentencing hearing on September 1, 2010.  (*Id.*).

On September 1, 2010, the trial court adjudicated petitioner guilty of sale of cocaine, reviewed the pre-sentence investigation, heard arguments from counsel as to the appropriate sentence, considered testimony from petitioner's wife, petitioner, and Jackson County Sheriff's Office Captain Joey Rabon, and sentenced petitioner to 12 years in state prison.  (Exs. D (sentencing transcript) E (judgment)).  The Florida First District Court of Appeal ("First DCA") affirmed the judgment on August 21, 2012.  *Jackson v. State*, 95 So. 3d 444 (Fla. 1st DCA 2012) (Mem.) (copy at Ex. L).

On September 26, 2012, petitioner filed a *pro se* motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. N, pp. 1-21; Ex. S, pp. 1-21).  The state circuit court summarily denied the motion on October 29, 2012.  (Ex. N, p. 22; Ex. S, p. 22).

On October 30, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he twice amended.  (Ex. N, pp. 23-56, 57-95, 96-143).  The state circuit court struck the motions as facially

insufficient with leave to amend.  (Ex. N, p. 144).  Petitioner filed a third amended motion on October 23, 2013.  (Ex. N, pp. 159-176).  The state court denied relief without an evidentiary hearing.  (Ex. N, pp. 177-200 and Ex. O, pp. 201-251).  The First DCA affirmed, per curiam and without a written opinion.  *Jackson v. State*, 149 So. 3d 5 (Fla. 1st DCA 2014) (Table) (copy at Ex. Q).  The mandate issued October 1, 2014.  (Ex. R).

While his Rule 3.850 proceeding was pending, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a), on November 21, 2012.  (Ex. S, pp. 23-28).  The state circuit court denied the motion on December 14, 2012.  (Ex. S, pp. 29-94).  The First DCA affirmed, per curiam and without a written opinion.  *Jackson v. State*, 108 So. 3d 1083 (Fla. 1st DCA 2013) (Table) (copy at Ex. T).  The mandate issued March 20, 2013.  (Ex. U).

Also while his Rule 3.850 proceeding was pending, petitioner filed a *pro se* petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel.  (Ex. V).  The petition was denied on the merits on February 6, 2014.  *Jackson v. State*, 132 So. 3d 360 (Fla. 1st DCA 2014) (Mem.) (copy at Ex. T).

Petitioner filed his federal habeas petition on December 30, 2014.  (Doc. 1).
The petition presents six claims.  (*Id*.).  Respondent asserts that each claim fails
because petitioner fails to satisfy his burden under § 2254(d).  (Doc. 18, pp. 6-19).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody
pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death
Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.
Section 2254(d) provides, in relevant part:

>    (d)  An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim–
>
>        (1)  resulted in a decision that was contrary to, or involved
>    an unreasonable application of, clearly established Federal law,
>    as determined by the Supreme Court of the United States; or
>
>        (2)  resulted in a decision that was based on an
>    unreasonable determination of the facts in light of the evidence
>    presented in the State court proceeding.

28 U.S.C. § 2254(d) (2015).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47,

130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S.

Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as

opposed to the dicta, of this Court's decisions." (internal quotation marks and

citation omitted)).

After identifying the governing legal principle(s), the federal court determines

whether the state court adjudication is contrary to the clearly established Supreme

Court case law.  The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only

if either the reasoning or the result contradicts the relevant Supreme Court cases.

*Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does

not even require awareness of our cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them.").  Where there is no Supreme

Court precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that

counsel was *per se* ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants:  "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*.; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If

this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## DISCUSSION

Grounds One, Two and Three

Petitioner's first two grounds assert that Fla. Stat. § 893.13 is unconstitutional on its face because it violates due process by eliminating a mens rea requirement. (Doc. 1, pp. 6-7 in ECF).  Respondent argues that relief on this claim is foreclosed by *State v. Adkins*, 96 So. 3d 412 (Fla. 2012), and *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1856 (2013).  (Doc. 18, p. 6).  Petitioner agrees in his reply that Grounds One and Two are without merit, and notifies the court that he abandons these claims.  (Doc. 21, pp. 1-2).

Petitioner's third ground for relief claims that trial counsel was ineffective for failing to seek dismissal of petitioner's charge on the grounds that Fla. Stat. § 893.13 is unconstitutional on its face.  (Doc. 1, pp. 8-9 in ECF).  Respondent asserts that because petitioner's underlying constitutional challenge to the statute lacks merit, counsel cannot be ineffective for failing to raise it.  (Doc. 18, pp. 6-7).  Petitioner's reply agrees with respondent that this claim is without merit, and notifies the court that he abandons Ground Three.  (Doc. 21, p. 2).  Because petitioner has abandoned Grounds One, Two and Three, the court should deny habeas relief on these claims.

Ground Four          "Ineffective Assistance Of Counsel In Contravention Of United
                     States Constitutional Amendments 6 And 14 During Sentencing
                     Phase Of Criminal Proceeding."

Petitioner claims trial counsel was ineffective at sentencing because he failed to argue "for a downward departure sentence based on conceded sentence manipulation by Captain Joey Dean Rabon of the Jackson County Sheriff's Department." (Doc. 1, p. 11 in ECF). Petitioner explains his theory of sentence manipulation as follows:

> The sentencing guidelines for Jackson's first cocaine sale called for a non-state prison sentence; Jackson scored below 44 points. With each decision to defer an arrest and instead arrange another undercover buy, the officers increased the sentencing guidelines range substantially. In doing so, the officers allowed more cocaine to be sold in the community that Capt. Rabon swore he and other officers were protecting from Jackson, and successfully persuaded the trial court to impose a sentence harsher than the guideline sentence had Jackson been arrested after the first sale.

(*Id.*, p. 12 in ECF). Petitioner also faults counsel for "fail[ing] to move to consolidate the other related and pending cases with the instant case, 09-744, after learning that the officers participated in sentence manipulation." (*Id.*). Petitioner further contends counsel was deficient because after the judge announced his preliminary determination that a 12-year sentence was appropriate, counsel should have "mov[ed] for a comparative proportionality review of that sentence and argued that imposition of the sentence would result in unwarranted sentencing disparity

between Jackson's sentence and the sentences previously discussed that were imposed for similar crimes on defendants with similar or worse records." (*Id*.). Petitioner argues that had counsel made the sentencing arguments petitioner proposes, there is a reasonable probability his sentence would have been different, and there is also a reasonable probability he would not have pleaded guilty and would have insisted on going to trial. (Doc. 1, p. 13 in ECF). Respondent asserts that the state court's rejection of petitioner's claim was a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). (Doc. 18, pp. 7-16).

A.    Clearly Established Federal Law

In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 71 L. Ed. 347 (1926). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (*citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)). With regard to a plea admitting criminal conduct, the Supreme Court explained:

> A guilty plea "is more than a confession which admits that the accused did various acts." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969). It is an "admission that he committed the crime charged against him." *North Carolina v. Alford*,

400 U.S. 25, 32, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970).  By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."

United States v. Broce, 488 U.S. 563, 570, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady at 748.  Accordingly, in the context of a guilty plea, the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." Alford, 400 U.S. at 31; Boykin, 395 U.S. at 242.  The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding.  See McMann v. Richardson, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

"Once a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983).  This waiver includes all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000).  The

Supreme Court said in *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.*, 411 U.S. at 267; *see also  Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").  A jurisdictional defect is one that "implicates a court's power to adjudicate the matter before it."  *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002).

The advantages of entering a plea may only be secured "if dispositions by guilty plea are accorded a great measure of finality."  *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  Recognizing that a prisoner more often than not "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea", courts accord great deference to a defendant's

statements during a plea colloquy and are reluctant to allow a defendant to go behind

his own sworn testimony.  *Id.*, 431 U.S. at 71.

> [T]he representations of the defendant, his lawyer, and the prosecutor
> at such a hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings.   Solemn declarations in open court carry a strong
> presumption of verity.   The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal,
> as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted).

When a petitioner challenges the voluntariness of his plea based upon

allegations of ineffective assistance of counsel, the two-prong standard set forth in

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),

applies.  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985);

*see also Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011)

(identifying *Strickland* as the clearly established federal law governing a habeas

petitioner's challenge to his conviction obtained through a plea bargain).  To obtain

relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation

fell below an objective standard of reasonableness," and (2) "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689. The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70. Counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56-57

(*quoting McMann*, 397 U.S. at 771).   Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  Thus, while counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 58-59.  "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177

F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an

easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d

284 (2010).   "Establishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105.

As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly" so.
> The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial.  Federal habeas courts must guard against
> the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).   When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.   The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.     Federal Review of State Court's Decision

Petitioner presented this claim to the state courts as Ground Three of his third

amended Rule 3.850 motion.  (Ex. N, pp. 168-172).  The state circuit court denied

relief on the merits.  (Ex. N, pp. 178-179).  The First DCA summarily affirmed.  (Ex.

Q).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's

summary affirmance, which is the final state court adjudication on the merits of

petitioner's claim.   *Richter*, 562 U.S. at 99 ("When a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, — F.3d —, 2016 WL 4440381, at *5 (11th Cir. Aug. 23, 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision). Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*." *Wilson* at *5. In *Richter*, the Court ruled that, "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Id*. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id*. at 102. Under that test, petitioner must establish that there was no reasonable basis for the Florida First DCA to affirm the denial of relief on his ineffective assistance claim.

The First DCA could reasonably have concluded that petitioner failed to establish deficient performance and prejudice under *Strickland*, because defense

counsel made the same substantive arguments petitioner proposes.  At sentencing,

defense counsel argued:

> **MR. TAYLOR** [defense counsel]:   [I]n this particular case,
> having been familiar for quite a while now with what went on in the
> Michael Jackson case, which was a, over an extended period of
> time, apparently, the local law enforcement was using a C.I. that they called
> Number 250, 250.  And he made a number of alleged buys from my
> client over time, one of which we've pled no contest to and we're before
> the Court on.  Nonetheless, at no time after the first one or the second
> one or the third one was Mr. Jackson arrested.  Presuming the,
> presumably they were legitimate controlled buys and there would have
> been no reason not to arrest Mr. Jackson.  And we may or may not
> ultimately – well, and the reason I bring that up, not because we're
> talking about the other cases, but for comparative sentencing situations
> and resolutions here.  And I sent to the Court and also to the State,
> marked it as Exhibit A, a work-up of comparative sentence situations
> dealing with two other individuals – a Windell Peterson and a Norris
> Wynn.
>
> Peterson's cases begin with 10-32-CF.  Wynn's began with 08-
> 752-CF.  Wynn had a total of seven different cases, all of which dealt
> with controlled buys of cocaine over a period of time, beginning in
> October of '08 and running through – excuse me, September of '08 and
> running through Oct -, February of '09.  So we are talking about a
> number of months.  Windell Peterson had three different, four different
> cases that basically occurred during the months of July, August and
> December of '09, again over an extended period of time.
>
> Both these individuals also apparently were not arrested after
> making one or two or three controlled buys and were left out on the
> street for whatever reasons law enforcement thought appropriate.  I
> suggest it was for either trying to get the feds interested, which did not
> occur, or for what's called sentencing enhancement purposes, to try to
> get scores up.  And I say that because I have the scoresheet that's been
> provided in conjunction with the one case we're here on today and,
> under the scoresheet, my client, with basically one prior felony and two

misdemeanors, scores to a non-state prison sentence in that his points are below 44. So we're dealing with a below 44 score on one. Of course, you get three, four, five, six, seven counts out there over a period of time and ultimately you can argue for a, at least minimum sentence under the code.

But what bothers me in conjunction with dispositions of other drug dealers, and I think I can call them that based on their pleas and sentences, was the Windell Peterson, who was selling – at one point in time was charged with trafficking because he had over 250 grams of cocaine. That was reduced down to a possession with intent. He had another trafficking case, 10-33, which would have been a first-degree felony with minimum mandatories, and that too was reduced down and he ended up pleading out to 86 months Department of Corrections, total sentence, by agreement. And he scored, in one of those cases, he finally got his score up to roughly an 89.6 median; 67.2 months is the low end, and he was sentenced to 86 months by agreement with the State.

Norris Wynn, who was out for a longer period of time, making a number of supposed sales – incidentally, the Peterson case was also being used, C.I. 250 was being used in that case. Mr. Wynn made any number of sales. His cases were crack cocaine. And he, I don't know his scoresheet, but I do know that he pled out on all of his cases, again a negotiated plea, to eight – to 96 months in the Florida Department of Corrections, which is basically an eight-year sentence.

Our offer is 15 years, the max, which is why we decided to enter a plea, try to get some comparisons to the Court and suggest that, at some point in time, we might be able to resolve this case at something below a 15-year sentence. My client has one prior felony. I believe Norris Wynn had six or seven prior to his package plea. So it's really a comparative issue.

My client has some comments he wants to make. I would point out that when these cases came down, a number of older automobiles, some of which he had had for more than five, six and seven years, were seized by law enforcement. He did not contest any of those and consented that they be put to a sale so that the sheriff's department

could generate some funds.  And my understanding is in excess of 21 or 22 thousand, maybe 23 thousand dollars was generated from those sales.  So it's not like we're not trying to finally get things right, if you will.  Our request is a 96-month sentence.  Any my client would like to briefly address Your Honor, and I've got his wife here, as well.

(Ex. D, pp. 106-109).  The State presented the testimony of Captain Rabon who

encouraged the court to impose the maximum sentence of 15 years:

> A [Captain Joey Dean Rabon].  Your Honor, it's law enforcement's position that Michael Jackson ran a drug business, a cancerous drug business, in our community for a number of years.  He operated a crack house that served a vast number of individuals in Jackson County and the tri-state area.  Not only would Michael Jackson sell street-level $20 pieces of crack, but he'd also sell ounce amounts of crack, and did that for a number of years here in Jackson County.  He managed and operated a number of crack houses where crack was sold at street-level levels.  In 2008, a brutal killing occurred at one of the crack houses, where an individual was shot and later burned to death at the residence.  For the most part, Michael Jackson always, always carried a gun and used violence and intimidation to run his drug business.  To say the least, he ruled with an iron fist.  In ending, during his drug business, he produced a deadly, infectious cancer, that caused great harm to our community.  Michael Jackson deserves the full penalty of law for the crimes he's committed against the people of Jackson County.

(Ex. D, p. 113).  Defense counsel cross-examined Rabon concerning why, if

petitioner was such a cancer to the community, law enforcement did not immediately

arrest him after the first controlled buy instead of proceeding with several additional

controlled buys.  (Ex. D, p. 114).  Captain Rabon explained:  "Well, we made a

number of, a series of controlled buys from Mr. Jackson to ensure that he would

actually go to prison for the damages he's done to the community. . . . [O]ne buy would [have] left you, as his counsel, an opportunity to try to dismantle our investigation." (*Id.*).

At the conclusion of arguments and testimony, the trial court announced his intention to impose a 12-year sentence, explaining:

> **THE COURT**:  All right.  Counsel, just remain where you are. Let me just say a few things on the record.  First of all, I reviewed the PSI and, for the record, again, he has all of these pending charges, but I'm only allowed to look at what he's charged with today, what he's pled to and the facts surrounding that.
>
> Mr. Taylor [defense counsel], you did your usual good job in this case.  I've known you a long time – as long as I've been practicing law, 32 years.  And you've pointed out the cases of Windell Peterson and Norris Wynn.  The folks in the audience don't do this kind of work like you and I and Mr. Redmon [the prosecutor] do, but when the State brings me a plea, either I accept it or I don't and I don't get to say what's an appropriate sentence in every case.  I just have to say is it one that I can stomach or not.  And so these folks [Peterson and Wynn] got these amounts.  Now, it's another thing in the law that every case is different and it doesn't matter.  I'm not going to punish Michael Jackson for Windell Peterson and Norris Wynn.  I'm not going to help because of Windell Peterson and Norris Wynn.  I've got to look at what's fair in a case like this today.  The other thing is that he did enter a plea and that makes me considerate of what happened to other folks that entered a plea, because whether or not anybody else likes it, I've got to live with myself to make sure that if I give a sentence in one case and we have sort of a similar case, I've got to give a similar sentence.
>
> I did note, for the record, as you just heard, that this was a sale of a thousand dollars['] worth of cocaine.  The people that have been in the court system here a long time know that we try lots of drug cases over here.  I used to try them when I was a prosecutor and I've sent lots

of people to jail for 15 years for selling one piece of crack cocaine. That's the maximum sentence, and I have. I've also done lesser sentences than that on plea bargains and all of that. He's not charged with trafficking; he's charged with sale, which the maximum sentence is 15 years. But I just wanted the folks in the audience to know that it's always been my idea, and of course every case is different, but if you're in the business of selling drugs, you run the risk of going to jail.

If you watch my court with all these cases we have on a plea day or something, people that are charged with possession of drugs get treated differently than people that sell. And it goes back to the old days of moonshiners, that if they got caught making moonshine, they stood the risk of going to jail. And to me, people that sell drugs are about the same thing as those days, is that if you're in the business of selling drugs versus being a drug addict or something else.

Now, that doesn't mean I've already pre-judged your client about anything, but I'm going to take a short break here in a minute, but I wanted to say a couple of things else on the record. There's Florida, Florida Statute 921.16, and that concerns when sentences are to be concurrent and when they are to be consecutive. And I know Mr. Taylor knows this, but I wanted to emphasize this. And I'm not considering all the other charges, but the law says that sentences of imprisonment for offenses not charged in the same indictment or information shall be served consecutively unless the Court directs that two or more sentences run concurrently. So there's a presumption that – and I believe, Mr. Redmon, he's charged in separate informations for all these other cases?

**MR. REDMON**: That is correct.

**THE COURT**: I'm not deciding those cases, but I wanted to read that into the record so Mr. Taylor and Mr. Redmon know where I'm coming from, that there's a presumption in the law that if he is further prosecuted or further sentenced that they are to be consecutive. I'm not saying that's the case, don't have to be, but the law says there's a presumption that there is.

I feel like an appropriate sentence in this case is not the maximum, but is 12 years, and that's what I intend to give him, but I'm going to take a break for about 15 minutes, let the attorneys perhaps confer, and then we'll come back and impose the sentence in about 15 minutes.  Court will be in recess.

(Ex. D, pp. 117-119).

The sentencing transcript demonstrates that defense counsel made what petitioner describes as a "sentence manipulation" argument (law enforcement's decision not to arrest petitioner after the first controlled buy but to instead defer his arrest until after several other controlled buys were made) as well as petitioner's "comparative proportionality review" argument (that the court should impose the same or similar sentences as those received by Windell Peterson and Norris Wynn). The record conclusively refutes petitioner's claim that counsel failed to make these arguments.

As for counsel's alleged failure to move for a "downward departure", petitioner did not "score" a minimum prison sentence[3]; therefore, no downward departure was available.  Counsel did, however, argue for a sentence below the statutory maximum.  Petitioner has not shown counsel was deficient in this respect.

---

[3] As defense counsel explained at sentencing, under Florida's sentencing guidelines, petitioner "score[d] to a non-state prison sentence in that his points [were] below 44."  (Ex. D, p. 107).

As for counsel's alleged failure to move, during sentencing, to consolidate all of petitioner's pending cases including the instant case, a motion to consolidate would have been denied. In Florida, the "'rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are "connected" only by similar circumstances and the accused's alleged guilt in both or all instances.'" *Ellis v. State*, 622 So. 2d 991, 999 (Fla. 1993) (*quoting Wright v. State*, 586 So. 2d 1024, 1029 (Fla. 1991)). Counsel was not ineffective for failing to make a meritless argument for consolidation. *See Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

As a final note, petitioner mentions in the most conclusory of terms that he would not have pleaded guilty but for counsel's deficient arguments at sentencing. Petitioner fails, however, to connect counsel's arguments at sentencing to the voluntary and intelligent character of the plea he entered two weeks prior.

For all of the foregoing reasons, it would not have been unreasonable for the First DCA to conclude that petitioner failed to show deficient performance or

prejudice under *Strickland*.   Petitioner is not entitled to federal habeas relief on

Ground Four.

Ground Five          "Ineffective Assistance Of Trial Counsel In Contravention Of
                     United States Constitutional Amendments 6 And 14, Or,
                     Alternatively, Involuntary Open Plea, As A Result of Trial
                     Counsel's Misadvise[sic] Concerning The Amount Of Time
                     Defendant Would Receive By Agreeing Not To Contest Sheriff's
                     Forfeiture Complaint Seeking Forfeiture Of Property Seized
                     During Execution Of Arrest Warrants For Undercover Sales."

Petitioner challenges the validity of his no contest plea on the ground that trial

counsel misadvised him concerning the amount of time he would serve if he entered

the plea and declined to contest the forfeiture of certain property.   Specifically,

petitioner alleges:

> Prior to the open plea and sentencing hearing, Taylor [defense
> counsel] advised Jackson that he scored below 44 points and, therefore,
> the sentencing guidelines for his cocaine sale called for a non-state
> prison sentence.  Taylor then told Jackson not to contest the forfeiture
> of his property because he, Taylor, had worked a deal with the State
> and Sheriff, to the effect that they would each recommend to the judge
> that Jackson receive the recommended guidelines sentence.  Taylor
> further explained to Jackson that he would need to enter an open plea
> to the trial court in order to receive the recommended sentence.
> Jackson, believing this to be true, agreed to forego the forfeiture
> proceeding and entered an open plea to the trial court.

(Doc. 1, p. 14 in ECF).  Respondent argues that the state court's rejection of this

claim was consistent with clearly established Federal law.  (Doc. 18, pp. 17-18).

A.     Clearly Established Federal Law

The clearly established Federal law governing challenges to guilty pleas on grounds of ineffective assistance of counsel is set forth above.

B.     Federal Review of State Court's Decision

Petitioner presented this claim to the state courts as Ground Four of his third amended Rule 3.850 motion.  (Ex. N, pp. 173-174).  The state circuit court denied relief on the merits, finding petitioner's claims conclusively refuted by the record (petitioner's written plea and the transcript of the plea hearing).  (Ex. N, pp. 179). The First DCA summarily affirmed.  (Ex. Q).

In light of petitioner's declarations on the plea form and during his plea colloquy, the First DCA could reasonably have concluded that petitioner's allegation – that counsel promised him he would not go to state prison if he entered the open plea and did not contest the forfeiture proceeding – was conclusively refuted by the record.  By signing the plea form, petitioner attested that he knew his maximum sentence exposure was 15 years in state prison; that no one, including his attorney, made any promises or suggestions of any kind that if he pleaded no contest to the charge he would receive a light sentence, probation, or other form of leniency; and that he was not forced, threatened, persuaded, promised, induced or otherwise influenced to enter his open plea.  (Ex. B).  During the plea colloquy, petitioner

acknowledged under oath that he understood he could receive the maximum sentence of 15 years in the Florida Department of Corrections.  (Ex. C, p. 133). Petitioner also acknowledged that the determination of his sentence was at the sole discretion of the judge, and that the only agreement concerning his sentence was that the judge would order a pre-sentence investigation and conduct a sentencing hearing at which petitioner could present testimony and evidence on the appropriate sentence. (*Id*.).  Petitioner affirmed that no one promised him anything or threatened him in any manner to get him to enter his open plea.  (*Id*., p. 134).

On this record, petitioner cannot show that the state court's rejection of his claim was contrary to Federal law, involved an unreasonable application of Federal law, or was based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six          "Ineffective Assistance Of Appellate Counsel For Failing To Raise Issue Of Trial Counsel's Ineff[f]ectiveness During Sentencing Phase Of Criminal Proceeding, And For Failing To Raise Issue Of Trial Court's Error During Same Proceeding, And For Failing To Seek Proportionality Review Of Criminal Penalty."

Petitioner's final claim is that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective at sentencing (for the reasons outlined in Ground Four, above), and that the trial court "reversibly erred by explicitly refusing to consider the defense's evidence of sentences received by other

similarly situated defendants."  (Doc. 1, pp. 17-18 in ECF).  Respondent argues that the state court's rejection of this claim was consistent with clearly established Federal law.  (Doc. 18, pp. 18-19).

A.    Clearly Established Federal Law

An ineffective assistance of appellate counsel claim is considered under the two-part test announced in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective).  Petitioner must show (1) appellate counsel's performance was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's unreasonable performance, petitioner would have prevailed on his appeal.  *Smith*, 528 U.S. at 285-86.

B.    Federal Review of State Court's Decision

Petitioner presented this claim to the state court in his state habeas petition alleging ineffective assistance of appellate counsel.  (Ex. V).  The First DCA denied relief on the merits, without explanation.  (Ex. W).

Petitioner's claim fails because, as discussed in Ground Four, trial counsel was not ineffective at sentencing.  "Appellate counsel cannot be deemed ineffective for failing to raise issues 'reasonably considered to be without merit.'"  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (*quoting Alvord v. Wainwright*, 725

F.2d 1282, 1291 (11th Cir. 1984)).   As for appellate counsel's failure to raise petitioner's proposed claim of trial court error, it would not have been unreasonable for the First DCA to conclude that petitioner failed to establish deficient performance or prejudice.   The trial court's sentence was within the parameters provided by petitioner's plea and Florida law.   Petitioner's contention that the trial court "explicitly refus[ed] to consider the defense's evidence of sentences received by other similarly situated defendants" is belied by the sentencing transcript.   The trial court considered defense counsel's argument but found the defendants whom the defense considered similar to be quite different.  (Ex. D).

Petitioner has not shown that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground Six.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed,

even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Michael Fitzgerald Jackson*, Jackson County Circuit Court Case No. 09-CF-744, be DENIED.

2.   That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 1st day of November, 2016.


                        /s/ *Charles J. Kahn, Jr.*
                        **CHARLES J. KAHN, JR.**
                        **UNITED STATES MAGISTRATE JUDGE**



                        NOTICE TO THE PARTIES

        Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.